IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  06-cv-02090-WYD

MARK JORDAN,

      Applicant,

v.

R. WILEY, Warden,

      Respondent.

---

ORDER ON PETITION FOR HABEAS CORPUS

---

      Applicant Mark Jordan is in the custody of the United States Bureau of Prisons ("BOP") at ADX Florence.  On October 20, 2006, Mr. Jordan filed a *pro se* Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  District Judge Phillip S. Figa entered an Order to Show Cause on November 6, 2006, directing Respondent to show cause why the Application should not be granted.  Respondent filed a Response on December 8, 2006, and Applicant filed a Reply on January 30, 2007.  This case was reassigned to me on January 8, 2008.

      I must construe liberally the Application and other pleadings Mr. Jordan has filed because he is a *pro se* litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I should not act as a *pro se* litigant's advocate.  *See Hall*, 935 F.2d at 1110.  For the reasons set forth below, the action will be dismissed.

I.  Statement of the Case

    The facts leading to this action are as follows.  On October 3, 2005, while housed in the Special Housing Unit ("SHU") at ADX, Applicant asked Officer Shawn P. Quenelle if he could make a telephone call.  Officer Quenelle responded that Applicant could not use the telephone because Applicant had not submitted a written request for use of the telephone, and further, there were already too many other telephone calls scheduled.  Officer Quenelle alleges that  Applicant then stated, "[t]his is the kind of stuff that makes me want to stab someone," while Officer Quenelle was standing either in the sallyport[1] of Applicant's cell, or outside the open outer door of the cell.  Response at Exhibit E, p. 3.  However, Applicant alleges that it was actually inmate George Scalf, then housed in the cell next to Applicant's, who in fact yelled "[i]t's that kind of shit that makes a motherfucker want to stab up some shit," as Officer Quenelle was leaving the cell range.  Petition at 8.

    Mr. Quenelle did not write an incident report regarding Applicant's alleged statement on October 3, 2005.  However, after being informed by his supervisor that the alleged statement qualified as a threat under Offense Code 203, Threatening Another With Bodily Harm ("Code 203"), on October 4, 2005, Mr. Quenelle wrote an incident report charging Applicant with Code 203.[2]  Due to this incident report, also on October

---

[1]According to Respondent, a sallyport is "the approximately 3-foot area between an inmate's inner cell grill and the outer cell door."  Response at Exhibit E, p. 3.

[2]28 C.F.R. § 541.13 contains a list of prohibited acts and disciplinary scale.  Table 3 of that section sets forth Code 203: "Threatening another with bodily harm or

4, 2005, Lieutenant Bier advised Applicant of his rights and proceeded to investigate the charges. Applicant informed Lieutenant Bier of his belief that the statement, regardless of which inmate said it, was not in violation of BOP regulations because an inmate could only be punished for a specific threat, not for a general threat. Lieutenant Bier thereafter concluded that Applicant had been appropriately charged with Code 203, and referred the incident report to the Unit Disciplinary Committee ("UDC").[3]

On October 6, 2005, the UDC conducted a hearing on the incident report. Applicant provided a written statement to the UDC in which he asserted that because the incident report was a 200-series charge, the incident report must be referred to the DHO. Applicant also requested that Officer Masterson be appointed as his staff representative, and that Officer Quenelle and other prison officials appear as witnesses. He further requested that he be provided all exculpatory evidence prior to the DHO hearing, including the SHU log and sign-in sheets. The UDC determined that Applicant committed the prohibited act, and referred the charges to the DHO for further hearing. The UDC further recommended that, contingent upon the DHO finding that Applicant committed the prohibited act, Applicant receive disciplinary segregation as a sanction.

---

any other offense", which falls within the second category of offenses which are considered of high severity.

[3]Following an incident investigation, a prison disciplinary matter is referred to the UDC for a hearing, pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the high category offenses, the UDC then refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. *See* 28 C.F.R. § 541.15.

The UDC provided Applicant with written notice of the hearing and an explanation of his rights at the hearing.

On December 21, 2005, the DHO held a hearing on the incident report. Applicant was present at the hearing, but provided a written statement to the DHO in lieu of a verbal statement.  Applicant also submitted a written statement from inmate Scalf, in which inmate Scalf alleged that he had made the threatening statement. Although Applicant had requested that certain witnesses be present, the DHO determined that his witnesses were not material to the charge because they did not directly observe the incident.  After examining the available evidence, the DHO found Applicant guilty of violating Code 203, and sanctioned him with 30 days of disciplinary segregation and disallowance of 27 days good conduct time.  Applicant was provided with a copy of the DHO report on April 28, 2006.

On May 2, 2006, Applicant appealed to the North Central Regional Office, arguing that his disciplinary conviction was obtained in violation of his Fifth Amendment right to due process and the Administrative Procedures Act ("APA").  The Regional Director rejected Applicant's appeal on June 9, 2006.  Applicant then appealed to the Central Office, alleging that the Regional Office had failed to consider all of the issues raised in his appeal and that his Fifth Amendment right to due process had been violated by his disciplinary conviction.  This appeal was denied on September 9, 2006.

Applicant filed the instant action on October 20, 2006, challenging the prison disciplinary conviction for which he lost good-time credits.  In Claim One, he alleges that

the offense for which he was convicted is impermissibly vague, in violation of his Fifth Amendment right. In Claim Two, he alleges that various deficiencies in the disciplinary process violated his Fifth Amendment right to due process. In Claim Three, he alleges that the deficiencies in the disciplinary process violated the APA.

Respondent has filed a Response to the Application. Respondent agrees that Applicant has named the correct individual as Respondent (as the person having custody of Applicant for purposes of the Application). Respondent also agrees that jurisdiction pursuant 28 U.S.C. § 2241 is appropriate for the claims presented by Applicant. However, Respondent contends that Applicant has failed to exhaust his administrative remedies with regard to two of his claims, and is therefore precluded from relief on those claims. Respondent further challenges Applicant's claims on their merits.

II. Standard of Review

Applications brought pursuant to 28 U.S.C. § 2241 are used to attack the execution of a sentence and must be filed in the district where the prisoner is confined. *See Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Claims involving revocation of good time credits or other sentence shortening issues are properly asserted pursuant to Section 2241. *See McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811-12 (10th Cir. 1997).

The questions here are whether the prison regulation at issue is impermissibly vague, whether the disciplinary proceedings violated Applicant's due process right, and whether the disciplinary proceedings violated the APA.

III.  Analysis

   A.  Exhaustion

   Prior to seeking habeas relief pursuant to § 2241, federal prisoners must exhaust

available administrative remedies.  *See Williams v. O'Brien*, 792 F.2d 986, 987 (10th

Cir. 1986); *see also Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634

(2d Cir. 2001).  Furthermore, the exhaustion requirement is satisfied only through

proper use of the available administrative remedies.  *See Woodford v. Ngo*, 548 U.S.

81, 90 (2006).  "Proper exhaustion demands compliance with an agency's deadlines

and other critical procedural rules because no adjudicative system can function properly

without imposing some orderly structure on the course of its proceedings."  *Id.* at 90-91.

The Tenth Circuit has emphasized that judicial intervention pursuant to § 2241 is usually

"deferred until administrative remedies have been exhausted" because "the agency is in

a superior position to investigate the facts."  *Williams*, 792 F.2d at 987.

   Here, Respondent concedes that Applicant fully exhausted his Fifth Amendment

due process claims, but argues that Applicant has failed to exhaust his "First

Amendment vagueness claim [and] the APA claim."  Response at 6.  However, as

argued by Applicant, and as substantiated by the pleadings, Applicant does not present

a First Amendment vagueness claim.  *See* Application at 27.  Instead, the Application

clearly states that the vagueness claim is brought pursuant to the Due Process Clause

of the Fifth Amendment.  *Id.*; Reply at 4.  My review of the administrative remedies

attached to the Application demonstrates that Applicant raised all of his instant claims in

his Regional Administrative Remedy Appeal.  *See* Application at Exhibit 4.  In his

subsequent Central Administrative Remedy Appeal, Applicant complained that the

Regional Director failed to consider his APA and vagueness claims, and incorporated

those claims as set forth in his initial administrative appeal.  *Id.* at Exhibit 2.

Accordingly, I find that Applicant has exhausted available administrative remedies with

regard to his instant claims, and I will proceed to the merits of these claims.

    B.  Merits of Applicant's Exhausted Claims

      1.  Claim One

In his first claim, Applicant contends that Code 203 "is impermissibly vague as

applied to punish [Applicant] for allegedly making the statement: 'This is the kind of stuff

that makes me want to stab someone,' . . . ."  Application at 27.  He also argues that the

regulation does not provide fair notice that general statements like the one he allegedly

made are in violation of the regulation.  *Id.*  Respondent asserts that this claim is without

merit because Code 203 clearly sets forth the conduct which it prohibits.  Response at

41.

A law so vague that persons of "common intelligence must necessarily guess at

its meaning and differ as to its application" violates due process of law.  *Connally v.*

*Gen. Constr. Co.*, 269 U.S. 385, 391 (1926) (citations omitted).  In practice, this means

that a "law is unconstitutionally vague if it fails to provide a reasonable opportunity to

know what conduct is prohibited or is so indefinite as to allow arbitrary and

discriminatory enforcement."  *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 554 (9th

Cir. 2004) (internal citations omitted); *see also Giaccio v. Penn.*, 382 U.S. 399, 402-03

(1966); *City of Chic. v. Morales*, 527 U.S. 41, 52 (1999).  A criminal statute must

therefore "define the criminal offense with sufficient definiteness that ordinary people

can understand what conduct is prohibited . . . ."  *Kolender v. Lawson*, 461 U.S. 352,

357 (1983).  However, as the Sixth Circuit has explained, prison regulations are not held

to the same exacting standards as criminal laws:

> Generally, due process prohibits excessively vague laws.  However, the
> degree of specificity required in prison regulation is not the same as that
> required in other circumstances: Due process undoubtedly requires
> certain minimal standards of specificity in prison regulations, but we reject
> the view that the degree of specificity required of such regulations is as
> strict in every instance as that required of ordinary criminal sanctions.
> This results from the fundamental difference between normal society and
> prison society.  The maintenance of strict security and discipline, with its
> unfortunate but unavoidable circumscription of an inmate's freedom to act,
> is essential to safe and efficient prison administration.  As such, it is nearly
> impossible for prison authorities to anticipate, through narrowly drawn
> regulations, every conceivable form of misconduct which threatens prison
> security.

*Wolfel v. Morris*, 972 F.2d 712, 717 (6th Cir. 1992) (quoting *Meyers v. Aldredge*, 492

F.2d 296, 310 (3d Cir. 1974) (citations omitted)).  As such, prison regulations need only

provide "fair warning" of the prohibited conduct.  *See id.* (citing *Grayned v. City of*

*Rockford*, 408 U.S. 104, 108-09 (1972); *Papachristou v. City of Jacksonville*, 405 U.S.

156, 162 (1972)).  Finally, Applicant's vagueness challenge to the regulation is premised

only upon the Fifth Amendment's due process guarantee.  Vagueness challenges that

do not involve First Amendment freedoms must be examined in light of the facts of the

case at hand.  *See United States v. Mazurie*, 419 U.S. 544, 550 (1975).  "One to whose

conduct a statute clearly applies may not successfully challenge it for vagueness."

*Parker v. Levy*, 417 U.S. 733, 756 (1974).  Applicant concedes, that for purposes of this

analysis, I must assume that he uttered the threatening statement as alleged.  *See*

Reply at 19 (citing *Newell v. Sauser*, 64 F.3d 1416, 1420 n.4 (9th Cir. 1995),

superseded on other grounds by *Newell v. Sauser*, 79 F.3d 115 (9th Cir. 1996)).

Therefore, in examining Code 203 for vagueness, I am concerned only with whether the

regulation provided sufficient notice to Applicant that his conduct was prohibited.

    I find that Code 203 clearly sets forth the conduct prohibited by the regulation.

By its plain terms, it prohibits threatening another person with either bodily harm or any

other offense.  *See* 28 C.F.R. § 541.13, Table 3.  While the regulation does not define

"threat," the plain meaning of a threat is "a communicated intent to inflict harm . . . on

another . . . ."  Black's Law Dictionary (8th ed. 2004).  Here, Applicant should have

realized that his statement to a prison official standing directly outside of his cell door

that, "[t]his is the kind of stuff that makes me want to stab someone," could constitute a

violation of Code 203.  Indeed, "[p]risoners, unlike free men, must well know that they

are considered potentially dangerous men and must expect to be highly regimented.  In

such cases the law requires less in the way of notice, and places a greater burden on

the individual to make inquiry or ask permission before acting."  *Meyers*, 492 F.2d at

311 (citation omitted).  I find that "it is clear what the [regulation] as a whole prohibits,"

*Hill v. Colorado*, 530 U.S. 703, 733 (2000) (citation and internal quotation marks

omitted), and therefore, that Applicant's claim is without merit.  *See also Estrada v.*

*Williamson*, 240 Fed. Appx. 493, 494 (3d Cir. July 11, 2007) (unpublished decision) (finding that Code 203 was not unconstitutionally vague).

      2.  Claim Two

Applicant alleges that the disciplinary proceedings violated his Fifth Amendment right to due process because: (1) the DHO's finding was not supported by sufficient evidence; (2) the DHO's finding was based on hearsay; (3) the DHO denied Applicant's request to call numerous witnesses; (4) the DHO refused to consider Applicant's tendered documentary evidence; (5) Applicant's staff representative failed to identify and call relevant witnesses and failed to secure and produce relevant evidence; (6) Applicant was not provided access to all the evidence that the DHO considered; (7) the DHO gave greater weight to statements by prison officials than statements by inmates; and (8) the disciplinary action was done in retaliation for Applicant's "jailhouse lawyering" activities.  Application at 27-31.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court recognized that the Due Process Clause provides certain minimum protections for inmates facing the loss of good time credits as a disciplinary sanction.  The *Wolff* Court held that an inmate must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (discussing *Wolff*,

418 U.S. at 563-67).

In order to support the loss of good time credits, the decision of the prison officials need not comport with the requirement of proof beyond a reasonable doubt applicable in a criminal trial.  Instead, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id.* at 455.  As the *Hill* Court explained, this standard of proof is not demanding because "[a]scertaining whether this standard is satisfied does not require examination of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.  Due process "does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board," *id.* at 457, and a disciplinary finding can be upheld on even "meager" evidence, as long as "the record is not devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.*

Applicant does not argue that he received insufficient notice of the charge against him or that he did not receive a statement of the reasons and evidence supporting his conviction.  Therefore, the scope of my review in this action is limited to determining whether Applicant received sufficient opportunity to present witnesses and documentary evidence and whether there is "some evidence" to support the disciplinary conviction.

a.  Opportunity to Present Witnesses and Documentary Evidence

Due process requires that prison officials provide an inmate facing disciplinary proceedings the opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. The scope of an inmate's right to call and confront witnesses and present documentary evidence is committed to the sound discretion of prison officials who must exercise their discretion on an individualized basis. *See Ramer v. Kerby*, 936 F.2d 1102, 1104 (10th Cir. 1991). Courts should defer to a prison official's decision "to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.* Errors made by prison officials in denying evidence at hearings are subject to harmless error review. *See Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006); *see also Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir. 1993). Moreover, an inmate cannot maintain a due process claim for failure to permit witness testimony unless he shows that the testimony "'would have affected the outcome of his case.'" *Grossman*, 447 F.3d at 805 (quoting *Chesson*, 986 F.2d at 366).

i. Witnesses

Applicant argues that the DHO denied his request to call prison officials Nestegard, Shartle, Church, Lincoln, and Bier as witnesses during the hearing, and instead, limited Applicant to calling witnesses who directly witnessed the incident. Application at 28-29.

First, with regard to Officer Nestegard, Applicant argues that his testimony would

have helped to established that it was actually inmate Scalf, and not Applicant, who made the statement, and that a falsified entry had been written in the SHU log attributing the statement to Applicant.  Application at 17.  However, because Officer Nestegard provided a written statement to the DHO, Applicant's claim that he was denied the ability to call this witness is at best no more than a claim of harmless error, as any information that this officer possessed was before the DHO.  Moreover, because in requesting to have a witness appear or testify at a disciplinary hearing, Applicant does not have a right to cross-examine the witness, *see Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976), Applicant would have had no right to cross-examine Officer Nestegard regarding his testimony that Applicant made the threatening statement.

Next, Applicant alleges that Lieutenant Bier would have testified regarding Applicant's statements to him during the initial investigation of the incident report. Application at 18.  Applicant alleges that prison officials Shartle and Church would have testified regarding the fact that they allegedly ordered Officer Quenelle to issue Applicant  an incident report due to the falsified entry in the SHU log.  *Id.*  Finally, Applicant alleges that Lieutenant Lincoln would have testified that "he informed Jordan through his sworn testimony in United States v. Jordan that a staff member can only 'write up' an inmate 'if he threatens an individual . . . .'"  *Id.* at 19.

With regard to these witnesses, the DHO's decision reflects that the DHO considered Applicant's request to call them to testify, and found that:

> [a]fter thoroughly reviewing the relevancy of what each of the requested witnesses can testify to the DHO notes that the requested testimony of

each witness is not material nor relevant to the issue of whether [Applicant] made threatening statements to the staff member. Specifically, the requested testimony of each witness did not meet the criteria of relevance as follows: 1) Evidence to address the issue of whether you did or did not make a threatening statement to a staff member. 2) The requested witnesses are not material issues in the charge as they did not directly witness the incident. 3) The requested testimonies of these witnesses are not probative nor does it establish this particular issue.

Response at Exhibit J, p. 3.

Like the DHO, I find that Applicant has made no showing that the testimony of the above witnesses was in any way relevant to the issue of whether he stated to Officer Quenelle, "[t]his is the kind of stuff that makes me want to stab someone." Although Applicant admits that these officials were not present during the time of the incident, he apparently argues that the testimony of these witnesses is relevant to his theory that the disciplinary charge was falsified by prison officials in retaliation for Applicant's jailhouse lawyering activities. *See* Application at 16-18. However, because I find that Applicant's retaliation claim is without merit, as set forth below, I also find that the DHO did not deprive Applicant of due process in refusing to call these witnesses. Applicant's failure to demonstrate that the testimony he requested and was denied would have aided his defense is dispositive of this claim. *See Grossman*, 447 F.3d at 805.

ii.  Documentary Evidence

Applicant argues that the DHO refused to accept and/or consider Applicant's evidence, including the written statement of inmate Scalf, the October 3, 2005 SHU entry log and the executive staff sign-in sheet. Application at 29.

First, contrary to Applicant's assertion, it is apparent in the record that the DHO accepted and considered the statement from inmate Scalf, the one inmate witness identified by Applicant. *See* Response at Exhibit J, p. 2. The DHO also considered Applicant's statement describing his version of the facts. *Id.* Beyond that, Applicant has failed to establish that the October 3, 2005 SHU entry long and the executive staff sign-in sheet were pertinent to the outcome of the proceeding, as these documents again relate to Applicant's retaliation claim, which I find to be without merit below. Because Applicant has not demonstrated that the DHO's refusal to consider these materials was anything more than a harmless error, I conclude that this claim is also without merit.

### b. Some Evidence

Applicant argues that his disciplinary conviction is unsupported by "some evidence." Application at 27. Applicant contends that the incident report filed against him was false, and that the reporting prison official is covering the truth, which essentially challenges the weighing of the evidence by the DHO. *Id.* at 27-30.

In accordance with Supreme Court precedent and federal regulations, as long as there is some evidence to support the DHO's determination, the decision will stand. *See Hill*, 472 U.S. at 455 ("[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced.") (citations and internal quotation marks omitted); 28 C.F.R. § 541.15.

My review of the administrative record reveals that in finding Applicant guilty of Code 203, the DHO relied upon the written statement of the reporting staff member, Officer Quenelle, and the written statement of the witnessing staff member, Officer Nestegard.  *See* Response at Exhibit J, p. 2.  The DHO found Applicant's denial of the conduct and other allegations not credible and attributed greater credibility to the reporting staff members.  *Id.* at 3.  Finally, the DHO provided his reasons for imposition of the disciplinary sanction, stating, "[t]hreatening another person with bodily harm promotes disrespect for that staff member and hampers his ability to control his area of responsibility.  Such behavior often escalates into physical confrontations and will not be tolerated in any manner."  *Id.*  Based upon all of the above, the DHO found that the greater weight of the evidence supported a finding of guilt.  *Id.*

I acknowledge that in the case at hand there is conflicting evidence, given that both Applicant and inmate Scalf claim that the allegedly threatening statement heard by Officer Quenelle was actually made by inmate Scalf.  However, considering the evidence in the record, I find that the DHO's decision meets the requirements of due process because it was supported by the written statements of two officers.  The information provided in a written incident report, standing alone, can satisfy the "some evidence" standard.  *Hill*, 472 U.S. at 456 (prison guard's copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause);  *Hudson v. Johnson*, 242 F.3d 534, 536-37 (5th Cir. 2001) (information contained in an incident report is "some

evidence" of inmate's guilt).  Although Applicant questions the credibility of these statements, my function here is not to re-litigate issues of credibility decided by the DHO.  *See Hill*, 472 U.S. at 455-56.

Applicant also challenges the sufficiency of the evidence by arguing that the DHO inappropriately relied on the "hearsay" statements of the prison officials, and inappropriately gave more weight to the statements of the prison officials than the statements of the inmates.  Application at 27-28.  Contrary to Applicant's claims, it is permissible to rely upon hearsay evidence, such as a written incident report, in a prison disciplinary proceeding.  *See Hill*, 472 U.S. at 456; *Smith v. Samu*, No. 97-1570, 1995 WL 275720, at *2 (10th Cir. May 10, 1995) (unpublished decision) (rejecting claim that it was improper to rely on prison guard's report because it was hearsay).  That a report is hearsay bears on its weight as evidence, and my review of Applicant's prison disciplinary proceeding does not involve making credibility determinations or re-weighing the evidence.  *See Hill*, 472 U.S. at 455; *Samu*, 1995 WL 275270 at *2. Accordingly, I find that the DHO's reliance upon the statements of the prison officials did not deprive Applicant of due process.

Here, the DHO articulated clear, distinct evidence for finding Applicant guilty, and it cannot be said that the decision is not supported by "some evidence."  Therefore, Applicant's conviction and loss of good time credits must stand.

c.  Ineffective Assistance of the Staff Representative

Applicant alleges that his staff representative, Officer Masterson, failed to help

him gather documentary evidence and failed to interview the inmates that were on Applicant's housing range on the day of the incident.  Application at 29-30.

A prisoner does not have a general constitutional right to have a staff representative  assist him during the disciplinary process.  *See Wolff*, 418 U.S. at 570; *see also Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990) (prisoner was not constitutionally entitled to counsel at prison disciplinary hearing); *Duarte v. Turner*, No. 93-2427, 1995 WL 57187 at *3 (7th Cir. Feb. 10, 1995) (unpublished decision) (rejecting habeas claim that staff representative was ineffective for failing to discover evidence). Instead, due process requires that inmates be provided with the aid of a staff representative only where the inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *See Wolff*, 418 U.S. at 570.  Because I find that neither of the above factors are applicable to Applicant's case, I therefore find that Applicant had no constitutional right to the assistance of another during the disciplinary process.  *See id.*

d.  Denial of Access to Evidence Considered by DHO

Applicant contends that he was denied access to evidence considered by the DHO. Specifically, he alleges that he was not provided with Officer Nestegard's memorandum prior to the hearing.  Application at 30.

"The denial of access to evidence used by prison officials to prove the commission of an offense may infringe an inmate's right to know what evidence is used

against him and 'marshal the facts in his defense.'" *Griffin v. Brooks*, 13 Fed. Appx.

861, 864 (10th Cir. July 12, 2001) (unpublished decision) (citing *Young v. Kann*, 926

F.2d 1396, 1402 (3d Cir. 1991)).  Here, Respondent does not agree that Officer

Nestegard's memorandum was deliberately denied to Applicant, because Respondent

argues that Applicant's staff representative was provided with the investigation file,

which contained Officer Nestegard's memorandum.  Response at 30.  Respondent

further argues that even if Applicant was denied access to the memorandum, such

denial did not prejudice Applicant's defense because the memorandum contained

information substantially similar to the information already contained in the incident

report.  *Id.*  I have reviewed the memorandum of Officer Nestegard, attached to the

Response at Exhibit F.  The memorandum is a short statement by Officer Nestegard

which corroborates the incident report written by Officer Quenelle.  *See id.*  This

memorandum does not contain any information that is not already provided in the

incident report, other than the mere fact that Officer Nestegard also witnessed this

incident.  *See id.*  However, it is apparent that Applicant was already aware that Officer

Nestegard was present on the SHU range during the incident, and therefore, could

effectively defend against this officer's testimony without access to the memorandum.

Therefore, I find that Applicant's right to due process was not violated by the alleged

withholding of Officer Nestegard's memorandum, because it did not deny Applicant the

right to "marshal the facts in his defense."  *Wolff*, 418 U.S. at 566.

e. Disciplinary Action Done in Retaliation

Applicant alleges that the incident report was falsified by prison officials in retaliation for Applicant's "jailhouse lawyering' activities," and that absent these activities, no incident report would have been issued.  Application at 10.

To prove vindictive prosecution, Applicant must show either (1) actual vindictiveness, or (2) a reasonable likelihood of vindictiveness, which raises a presumption of vindictiveness.  *United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991).  To specifically state a valid claim for retaliation, an inmate must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights," *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990), and he "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place," *Maschner*, 899 F.2d at 949-50.

Applicant apparently asserts that his "jailhouse lawyering" was a protected constitutional activity.  However, the Tenth Circuit has found that inmates do not have a protected interest in providing legal assistance to other inmates.  *See id.* at 950 (citing *Ervin v. Ciccone*, 557 F.2d 1260, 12652 (8th Cir. 1977) (finding that inmates do not have a protected interested in providing legal representation to other inmates)). Because Applicant does not have a protected interest in "jailhouse lawyering," he cannot assert a retaliation claim on the basis of this activity, and I find that this claim is without merit.

3.   Claim Three

Finally, Applicant alleges that the disciplinary action against him was arbitrary, capricious, an abuse of discretion, or in violation of law pursuant to the APA, 5 U.S.C. § 706(2)(A).  Application at 31-34.  In support of this claim, Applicant points to the same alleged deficiencies in his disciplinary proceeding that he previously identified in his due process challenge.  *Id.*

Under the APA, an agency's decision may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law."  5 U.S.C. § 706(2)(A); *see also Lopez v. Davis*, 531 U.S. 230, 240 (2001).  The Supreme Court has emphasized that the scope of review "is narrow and a court is not to substitute its judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983).  As long as the agency's decision "was based on a consideration of the relevant factors," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), overruled on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977), the reviewing court should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *Bowman Transp., Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 286 (1974), even though the court might otherwise disagree, *United States v. Allegheny-Ludlum Steel Corp.*, 406 U.S. 742, 749 (1972).

To make this finding that agency action was not arbitrary or capricious, a court must review the administrative record that was before the agency at the time of the decision, and "must consider whether the decision was based on a consideration of the

relevant factors and whether there has been a clear error of judgment . . . . Although

this inquiry into the facts is to be searching and careful, the ultimate standard of review

is a narrow one.  The Court is not empowered to substitute its judgment for that of the

agency." *Overton Park*, 401 U.S. at 416.  Instead, reversal of an agency action is

required only "[i]f the record before the agency does not support the agency action, if

the agency has not considered all relevant factors, or if [the court] simply cannot

evaluate the challenged agency action on the basis of the record before it."  *C.K. v. N.J.*

*Dep't of Health and Human Servs.*, 92 F.3d 171, 182 (3d Cir. 1996) (quoting *Florida*

*Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

        Neither party has identified the scope of the APA review to be used by the courts

in reviewing prison disciplinary proceedings.  However, the Northern District of Texas

has set forth the standard used by the Fifth Circuit in such cases as follows:

> Because the federal courts have a very narrow role in reviewing prison
> proceedings, the prison discipline context has developed a more
> particularized body of law regarding the arbitrary and capricious standard.
> (citation omitted).  The Fifth Circuit has held in a non-APA context that
> '[t]he federal courts cannot assume the task of retrying all prison
> disciplinary disputes . . . [n]o de novo review of the disciplinary board's
> factual finding is required, but the courts must consider whether' the
> discipline decision is supported by 'some facts' or 'whether any evidence
> at all' support the disciplinary action. *Smith v. Rabalais*, 659 F.2d 539,
> 545 (5th Cir. 1981) (citations omitted).  The Fifth Circuit has also noted
> that '[t]he quantum [of evidence] must be appropriate in the circumstances
> and allow a determination that the decision was not arbitrary or
> capricious.' (citations omitted).  Thus, in the prison discipline context, the
> Fifth Circuit has effectively utilized the 'some facts' or 'any evidence at all'
> standard as the standard for arbitrariness and capriciousness.  In the
> same context, the Supreme Court has accepted the 'some evidence'
> standard so as to 'help to prevent arbitrary deprivations without
> threatening institutional interests or imposing undue administrative

burdens.' *Hill*, 472 U.S. at 455-57.

*Triplett v. Federal Bureau of Prisons*, No. 08-cv-1252-K, 2009 WL 792799, at *9 (N.D. Tex. March 24, 2009) (unpublished decision); *see also Martinez v. Rathman*, No. 08-22828-CIV, 2009 WL 212184, at *7 (S.D. Fla. Jan. 29, 2009) (unpublished decision) (holding that decision of prison officials was not arbitrary and capricious where there were "at least some facts and evidence to support the finding of guilt and resultant loss of [credits]."); *cf. Clardy v. Levi*, 545 F.2d 1241, 1244-45 (9th Cir. 1976) (finding that the APA is not applicable to federal prison disciplinary proceedings).

In the absence of any controlling law from the Tenth Circuit, I find the standard used by the courts of the Fifth Circuit to be applicable here. As such, my review of whether Applicant's prison disciplinary conviction was arbitrary and capricious in violation of the APA is limited to whether the conviction was supported by "some evidence," as provided by the Supreme Court in *Hill*, 472 U.S. at 455-57. Because, as set forth above, I find it clear that Applicant's conviction was supported by "some evidence" in the form of two written reports from prison officials, I also find that this decision was not arbitrary and capricious, and that Applicant's APA claim is without merit.

Accordingly, it is

ORDERED that the habeas corpus application is DENIED and the action is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that each party shall bear his own costs and attorney's

fees.

Dated:  June 17, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge